Commonwealth of Pennsylvania *v.* Joseph Arnheim, Daniel Arnheim, David Arnheim and Solomon Goldsmith.

*Partnership—Conditions of partnership defined.*

A partnership can be created as well in a single business transaction, as for the purpose of carrying on a business extending over a period of time and involving a number of transactions.

*Criminal law—Embezzlement as consignee—Partnership.*

Where a contract provides for the parties thereto to share the profits and losses upon the sale of horses equally or otherwise, such contract constitutes a legal partnership, and there can be no conviction for embezzlement by one of the parties as consignee, there being nothing in the evidence to take the agreement out of the general rule defining a partnership.

Argued April 13, 1896.   Appeal, No. 48, April T., 1896, by Joseph Arnheim from judgment and sentence of Q. S. Allegheny Co., Sept. Sess., 1895, No. 591, on verdict of guilty. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ.   Reversed.

Indictment charging embezzlement by consignee and factor.

Defendants were indicted on the charge of embezzlement as consignees and factors of certain horses alleged to have been consigned to them by M. H. Tichenor et al., trading as Tichenor & Co.   Defendants were members of a limited partnership doing business under the name of The Arnheim Live Stock Co., Ltd.   There was evidence tending to show an agreement whereby certain horses belonging to Tichenor & Co. were to be sold through The Arnheim Live Stock Co., Ltd., and after deducting all expenses in connection with the purchase, sale and shipment of said horses the profits or losses were to be equally divided between Arnheim and Tichenor & Co.   The horses were sold by the Arnheim Co. and money deposited to their account, and subsequently that company was sold out by the sheriff without any remittance to or settlement with Tichenor & Co. by the Arnheim Co.

At the trial before McCLUNG, J., defendants submitted, inter alia, the following points.

1. Under all the evidence in the case, the verdict as to all the defendants should be not guilty, the jury, however, to pass upon the question of costs. *Answer:* Refused.

3. If the jury believe M. H. Tichenor & Company, previous to the sale, made a contract with the Arnheim Live Stock Company, Limited, or with any member of said company in its behalf, whereby they were to share in the profits and losses upon said horses, equally or otherwise, such contract constituted a legal partnership and there can be no conviction in this case. *Answer:* Refused and answered at length.

Verdict of guilty as to Solomon Goldsmith and Joseph Arnheim and not guilty as to Daniel Arnheim and David Arnheim, with a recommendation of mercy.

*Errors assigned* were answers to defendant's first and third points, reciting same.

*T. M. Marshall, Jr.*, with him *D. F. Patterson*, for appellant.

No paper-books submitted for the appellee.

OPINION BY REEDER, J., December 7, 1896:

While this was an indictment against several of the members of a limited partnership for embezzlement as consignees the verdict of the jury was "guilty" as to but two, one of whom, Joseph Arnheim, has appealed.

In the third point submitted by the defendant at the trial in the court below, the court was asked to say to the jury that, if the contract made with M. H. Tichenor & Company, "Whereby they were to share the profits and losses upon the sale of the horses equally or otherwise, such contract constituted a legal partnership, and there can be no conviction in this case."

Instead of affirming this point, the court said: "An agreement to purchase horses and share the profits and losses is evidence of the existence of a partnership, and, without more, would authorize the jury to find a partnership. But, under the evidence, we cannot say that, even if there was an agreement to share profit and losses, there was necessarily a partnership as between the parties, and hence the point is refused."

We think the defendant was entitled to an unqualified affirm-

ance of this point. A partnership can be created as well in a single business transaction, as for the purpose of carrying on a business extending over a period of time and involving a number of transactions. This is well settled in Pennsylvania by a line of decisions, beginning with Sims v. Willing, 8 S. & R. 103.

An agreement to share profits, without an agreement to share losses, may constitute a partnership : Edwards v. Tracy, 62 Pa. 374 ; Miller v. Bartlet, 15 S. & R. 137.

While it is true that an agreement to share profit and loss does not absolutely constitute a partnership, yet, unless there are circumstances in the transaction that show there was no purpose to create a partnership, they will control : Lindley on Partnership, pp. 67, 68, 69, 75, 76, and cases there cited. An agreement to share profits and losses may be said to be the type of a partnership contract.

There is nothing in the evidence of the defendant to take this agreement out of the general rule ; and therefore the court erred in not affirming this point. The testimony of the defendant was that there was an agreement between Arnheim & Company and Tichenor & Company that the latter should ship horses from Chicago to the former at Pittsburg, which would be sold by Arnheim & Company for the joint profit of both ; and, if there was no profit, that they should divide whatever loss was incurred between them.

The case was tried upon the theory, on the part of the commonwealth, that no such contract was ever entered into. The point presented asked the court to say that, if the jury believed there was such contract, it constituted a partnership. Under this testimony the court should have so said, there being nothing in the evidence of the commonwealth to show that the contract as alleged by the defendant was anything else but a contract of partnership, and the defendant was entitled consequently to an unqualified affirmation of this point.

We do not think there is any merit in the first assignment of error. Joseph Arnheim was a member of the limited partnership to the extent of one share of stock. It is true he was also an employee, receiving a certain stipulated sum for his services, as well as a share in the profits of the business. He himself testifies that in the absence of his brother he managed the business. The contract between Arnheim & Company whatever

its character may have been was made between himself and M. H. Tichenor & Company in Chicago. It was testified to by J. W. Bratton that Joseph Arnheim conducted this sale. The money received by the Arnheim Live Stock Company was received by their bookkeeper, and instead of being kept separate, appears to have been deposited to their general account and checked out by them, so that when payment was demanded the bank balance was exhausted, and Tichenor & Company could not procure their money.

Whether this action of the bookkeeper employed by the firm was or was not the result of Joseph Arnheim's action in quietly permitting it, was a question for the jury. The legal obligation of the Arnheims to keep Tichenor & Company's money separate and apart from their own is undeniable. If the horses were a consignment to them, the neglect to do so, and the use of the money by the firm for other purposes than payment to them, was embezzlement on the part of the members of the firm either permitting or knowing of its having been done and accepting the benefits of the result or acquiescing in the diversion of the money. Whether Joseph Arnheim was a party to this embezzlement was a question for the jury, and there was sufficient evidence in this case to warrant the court below in the submission of that fact.

The second assignment of error is sustained, the judgment reversed, and a venire facias de novo awarded.